**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER D. JOHNSTON and** | ) | |
| **HARTMAN LAW FIRM, P.A., on behalf** | ) | |
| **of themselves and all others similarly** | ) | |
| **situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No.:** |
| **vs.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **TAKATA CORPORATION, TK** | ) | |
| **HOLDINGS, INC., HIGHLAND** | ) | |
| **INDUSTRIES, INC., HONDA MOTOR** | ) | |
| **CO., LTD.,  AMERICAN HONDA** | ) | |
| **MOTOR CO., INC., TOYOTA MOTOR** | ) | |
| **CORPORATION, TOYOTA MOTOR** | ) | |
| **SALES, U.S.A., INC. and TOYOTA** | ) | |
| **MOTOR ENGINEERING &** | ) | |
| **MANUFACTURING NORTH** | ) | |
| **AMERICA, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, Christopher D. Johnston and the Hartman Law Firm, P.A., individually and on behalf of all others similarly situated, file this Class Action Complaint against Takata Corporation, TK Holdings, Inc., Highland Industries, Inc., Honda Motor Co., Ltd., American Honda Motor Co., Inc., Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America, Inc. for breach of express and implied warranty and fraudulent concealment, and allege as follows:

### Introduction

1. This case arises from the recent string of recalls and the deceptive and unlawful actions of Defendants associated with the potentially fatally defective airbags manufactured by

Takata and installed by vehicle manufacturers, including Honda and Toyota, in millions of vehicles globally.

2.      Defendants manufactured and installed defective airbags in millions of motor vehicles, actively and fraudulently concealed the defects from the public and federal regulators, and downplayed the extent of the harm caused by the defective airbags.

3.      Airbags are vehicle safety devices designed to inflate rapidly during a collision and protect occupants from colliding with the interior of the vehicle.  The first airbag designs were introduced during the 1970s with limited success; however, they became more mainstream in the late 1980s and early 1990s.  Airbags are now a critical safety component of motor vehicles that have been demonstrated to reduce harm and save lives, and consumers and passengers trust and rely on airbags, and their manufacturers, to ensure vehicle occupant safety.

4.      Defective airbags, on the other hand, can cause devastating injuries and even death.

5.      Takata is one of the largest manufacturers of airbags in the world and millions of drivers and passengers rely on its airbags for safety.

6.      In this Complaint, "Defective Vehicles" refers to all vehicles currently in the state of Florida that contain airbags manufactured by Defendant Takata and that have been subject to an airbag related warnings or recalls, including but not limited to the following:

-       2001-2007 Honda Accord
-       2001-2005 Honda Civic
-       2002-2006 Honda CR-V
-       2003-2011 Honda Element
-       2002-2004 Honda Odyssey
-       2003-2007 Honda Pilot
-       2006 Honda Ridgeline

- 2003-2006 Acura MDX
- 2002-2003 Acura TL/CL
- 2005 Acura RL
- 2002-2005 Lexus SC
- 2002-2005 Toyota Corolla
- 2003-2005 Toyota Tundra
- 2005-2008 Dodge Durango
- 2008-2013 GMC Acadia

"Defective Vehicles" further includes all vehicles in the state of Florida that contain airbags manufactured by Defendant Takata and are recalled at any point after the filing date of this Complaint for a reason relating to airbag defects.

7.     Airbags are designed to deploy upon impact in order to prevent serious injury and death resulting from bodily impact from the interior of a motor vehicle.  Collisions often occur at high speeds, and the deceleration from impact is virtually immediate.  Accordingly, in order to be effective, the airbag must effectively deploy at the moment of collision.  To accomplish this, the airbag triggers and wires are connected to the airbag systems with highly conductive metals, and small explosive charges are utilized to immediately inflate the airbags upon being triggered.  Takata's explosive charge components in its airbag systems were defectively manufactured since 2000.

8.     Rather than properly deploying the airbags to prevent injuries, the defective Takata airbag inflators literally become like weapons, exploding with metal debris and projecting shrapnel into the faces, necks, and bodies of drivers and passengers.

9.     Takata and Honda knew of the deadly airbag defect at least 13 years ago, but chose to do nothing to prevent further injury and loss of life.  Takata limited its first airbag defect recall, which stemmed from defective manufacturing in 2000, to a select group of Isuzu vehicles.

3

In Alabama, in 2004, a Takata airbag exploded in a Honda Accord and shot out metal fragments, severely injuring the car's driver.[1]  Takata and Honda could not explain the incident, called it an "anomaly," and failed to issue a recall or seek involvement from federal safety regulators.[2]  Even though Takata reported to Honda that it could not find the cause of the incident, Honda determined that Takata provided a reasonable explanation of the event as an anomaly.

10.     Takata reportedly ordered engineers to destroy evidence of cracked inflators and kept manufacturing defective airbags.  Honda continued to place the airbags in its vehicles while touting them as highly safe.

11.     On Tuesday, November 18, 2014, the National Highway Traffic Safety Administration ("NHTSA") announced that it is calling for a nationwide recall of vehicles containing certain airbags made by Takata based on the agency's evaluation of yet another failure outside of the current recall area.  The agency also issued a General Order requiring ten major vehicle manufacturers to file, under oath, a detailed report and produce all related documents concerning completed, ongoing, or planned testing of Takata inflators.

## Parties

12.     Defendant Takata Corporation ("Takata") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Takata is a specialized supplier of automotive safety systems that designs, manufactures, tests, markets, distributes, and sells its products, including the airbags that are at issue in this litigation.  Takata is vertically-integrated and manufactures the component parts for its products at its own facilities.

13.     Takata is and has been engaged in the business of designing, manufacturing,

---

[1] *See Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls*, NEW YORK TIMES, Sept. 11, 2014.
[2] *See id.*

distributing, marketing, and selling its products to consumers in Florida. Takata is authorized to and regularly conducts business in Florida. Takata's products, including the airbags at issue in this litigation, are regularly sold and used by consumers in Florida. Takata has, therefore, submitted itself to the jurisdiction of this Court.

14.     Defendant TK Holdings, Inc. ("TK Holdings") is a subsidiary of Takata and is headquartered in Auburn Hills, Michigan. TK Holdings designs, manufacturers, tests, markets, distributes, and sells airbags in Florida, including the airbags at issue in this litigation. TK Holdings, directly and through its subsidiaries, owns and operates approximately 56 manufacturing plants in 20 countries.

15.     TK Holdings is and has been engaged in the business of designing, manufacturing, testing, distributing, marketing, and selling airbags, including the airbags at issue in this litigation, to consumers in Florida. TK Holdings regularly conducts business in Florida, and its products, including the airbags at issue, are regularly sold and used by consumers in Florida. TK Holdings has, therefore, submitted itself to the jurisdiction of this Court.

16.     Defendant, Highland Industries, Inc. ("Highland") is a subsidiary of Takata Corporation and is headquartered in Greensboro, North Carolina. Highland manufactures industrial and automotive textile product solutions, including fabrics for the automotive airbag industry. Highland manufactures airbags in the United States, including the airbags at issue in this litigation which are regularly sold to and used by consumers in Florida. Highland has, therefore, submitted itself to the jurisdiction of this Court.

17.     Defendants Takata, TK Holdings, and Highland are collectively referred to herein as "Takata." Takata is the manufacturer of all of the faulty airbags recalled by NHTSA that are at issue in this litigation.

18.     Defendant Honda Motor Co., Ltd. ("Honda Motor") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Honda Motor manufactures and sells automobiles and other motorized vehicles through independent retailers, outlets, and authorized dealerships mainly in North America, Europe, and Asia.

19.     Honda Motor has been engaged in the business of designing, manufacturing, distributing, marketing, and selling its automobiles to consumers in Florida.  Honda Motor regularly transacts business in Florida, and its products, including its vehicles that contain the airbags that are the subject of this litigation, are regularly sold and used by consumers in Florida. Honda Motor has, therefore, submitted itself to the jurisdiction of this Court.

20.     Defendant American Honda Motor Co., Inc. ("American Honda") is a subsidiary of Honda Motor and is headquartered in Torrance, California.  American Honda manufactures and assembles its vehicles for sale in the United States in automobile plants located in Greensburg, Indiana; East Liberty and Marysville, Ohio; and Lincoln, Alabama.  American Honda also performs the marketing activities, and sales and operations for Honda cars, trucks, and sports utility vehicle parts in the United States.

21.     American Honda regularly transacts business in Florida, and its products, including its vehicles that contain the airbags that are the subject of this litigation, are regularly sold and used by consumers in Florida.  Honda Motor has, therefore, submitted itself to the jurisdiction of this Court.

22.     Defendants Honda Motor and American Honda are collectively referred to herein as "Honda."

23.     Honda automobiles sold in the United States, including the state of Florida, contain airbags manufactured by Takata.  NHTSA has recalled approximately 5,051,364 Honda

vehicles due to the fact that they contain defective Takata airbags: 2001-2007 Honda Accord; 2001-2005 Honda Civic; 2002-2006 Honda CR-V; 2002-2004 Honda Odyssey; 2003-2007 Honda Pilot; 2003-2011 Honda Element; 2006 Honda Ridgeline; 2003-2006 Acura MDX; 2002-2003 Acura TL/CL; and 2005 Acura RL.

24.     Defendant Toyota Motor Corporation ("Toyota") is the world's largest automaker and the largest seller of automobiles in the United States.  Toyota is a Japanese Corporation headquartered in Aichi Prefecture, Japan.

25.     Toyota regularly transacts business in Florida, and its products, including its vehicles that contain the airbags that are the subject of this litigation, are regularly sold and used by consumers in Florida.  Toyota has, therefore, submitted itself to the jurisdiction of this Court.

26.     Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota U.S.A.") is a wholly-owned subsidiary of Toyota and is responsible for the sales, marketing, and distribution in the United States of automobiles manufactured by Toyota.  Toyota U.S.A. is headquartered in Torrance, California.

27.     Toyota U.S.A. regularly transacts business in Florida, and its products, including its vehicles that contain the airbags that are the subject of this litigation, are regularly sold and used by consumers in Florida.  Toyota U.S.A. has, therefore, submitted itself to the jurisdiction of this Court.

28.     Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("Toyota Engineering") is a subsidiary of Toyota and headquartered in Erlanger, Kentucky. Toyota Engineering also has major operations in Arizona, California, and Michigan.  Toyota Engineering is responsible for Toyota's engineering design and development, research and development, and manufacturing activities in the United States, Mexico, and Canada.

29.     Toyota Engineering regularly transacts business in Florida, and its products, including its vehicles that contain the airbags that are the subject of this litigation, are regularly sold and used by consumers in Florida.  Toyota Engineering has, therefore, submitted itself to the jurisdiction of this Court.

30.     Defendants Toyota, Toyota U.S.A., and Toyota Engineering are collectively referred to as "Toyota."  Toyota automobiles sold in the United States, including the state of Florida, contain airbags manufactured by Takata.  NHTSA has recalled the following Toyota vehicles for having defective Takata airbags, totally approximately 877,000 potentially affected vehicles:

- 2002-2005 Lexus SC
- 2002-2005 Toyota Corolla
- 2003-2005 Toyota Corolla Matrix
- 2002-2005 Toyota Sequoia
- 2003-2005 Toyota Tundra

31.     Honda, Toyota, and Takata are collectively referred to herein as "Defendants."

32.     Plaintiff, Christopher D. Johnston, is a citizen of Florida.  Mr. Johnston owns a 2004 Acura MDX ("Acura"), which is his primary vehicle.  The Acura is registered in Florida, and the vehicle identification number is 2HNYD18964H508632.

33.     Plaintiff, Hartman Law Firm, P.A., ("Hartman") is an active professional association registered with the Florida Department of State with its main office and principal place of business located in Tallahassee, Florida.   Hartman owns a 2005 Toyota Tundra ("Tundra"), which is its primary vehicle.  The Tundra is registered in Florida, and the vehicle identification number is 5TBDT48175S475171.

## Jurisdiction and Venue

34.     The Court has subject matter jurisdiction under 28 U.S.C. § 1332, which provides for federal jurisdiction in class actions with minimal diversity when damages exceed five million dollars, exclusive of interest and costs.  The Court has supplemental subject matter jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

35.     Plaintiff Christopher D. Johnston is a citizen of Florida and resides in this district. Plaintiff Johnston's Acura is registered in Florida and is owned, maintained, and operated in this district by Plaintiff Johnston while residing in this district.  Plaintiff Hartman is a professional association registered in Florida with its main office and principal place of business located in this district.  Plaintiff Hartman's Tundra is registered in Florida and is owned, maintained, and operated in this district by Plaintiff Hartman while residing and conducting business in this district.  Venue is thus appropriate within the contemplation of 28 U.S.C. § 1391.

## Factual Allegations

36.     Defendant Takata is the world's second largest manufacturer of automotive safety devices, including airbags.  Takata played a key role in the development of driver side airbags and was the first to market them in the early 1980s.  Takata has supplied airbags to consumers and state and local governmental purchasers throughout the United States, including the state of Florida, since at least 1983, with airbags making up 37.3% of Takata's automotive safety products business in 2007.

37.     Takata also develops other safety technologies, including cushions and inflators – the components of Takata's manufactured airbags.

38.     The airbags at issue in this case were developed by Takata in the late 1990s in an

effort to make airbags more compact and to reduce the toxic fumes that earlier airbag models emitted upon deployment. The redesigned airbags are inflated by means of an explosive based on a common compound used in fertilizer and encased in a metal canister.

39.     The two Takata plants that manufactured the airbags that are at issue in this case are located in Moses Lake, Washington and Monclova, Mexico. These plants also manufacture airbag inflators.

40.     Airbags manufactured by Takata, including the airbags at issue in this case, have been installed in vehicles manufactured by at least ten different automakers, including Honda and Toyota. Honda has had a long relationship with Takata and was one of the first automakers to use the new airbags, which were placed in some models as early as 1998.

41.     Takata became a pioneer in "non-azide" inflators, which replaced toxic explosives called "azides." The phasing out of azides in the early 2000s caused Takata's new inflators to be in high demand.

42.     The Takata airbags were propelled with an ammonium nitrate mix that generates gas more efficiently than other chemicals used by rival manufacturers, but it can also be unstable, particularly if exposed to moisture.

43.     Machines at Takata's factories packed the ammonium nitrate chemical propellant into "wafers" that are then stacked inside the inflator. The inflator shoots out hot gas to inflate an airbag within thousandths of a second after sensors detect a car crash. However, if the wafers crumble or break, they can burn too quickly and create a high-pressure explosion.

44.     Takata now acknowledges that it erred in manufacturing the wafers. Takata identified a list of problems, including the fact that it failed to properly store propellant and shield it from moisture, which can cause the wafers to crumble many years later. Further, some

wafers were pressed together without sufficient force, and some inflators were made with just six wafers instead of the requisite seven.

45.     The two Takata plants, located in Moses Lake, Washington and Monclova, Mexico, that manufactured the defective airbags at issue here have been installed in vehicles manufactured by no less than ten different automakers.

46.     According to an anonymous former Takata insider, the defective wafers were made during a time when the company was under intense pressure from its customers to boost output to meet surging demand.  Takata said at the time, "Production demands vary over time, but our company's commitment to delivering quality products never varies."  This turned out to be false.

47.     In its own philosophy statement, Takata claims to be "motivated by the preciousness of life" and pledges to "communicate openly and effectively."[3]  Takata has fallen dreadfully short of living up to its "dream" of "a society with zero fatalities from traffic accidents."  This is especially so given the fact that many people are not being severely injured, or in some cases dying, from the traffic accident, but from Takata's defective airbags themselves.

48.     Since at least 2001, Takata has known that its airbags and the inflator component in particular, were defective, as Isuzu vehicles were recalled that year due to exploding Takata airbags.

49.     As previously alleged, in 2004 in Alabama, a Takata airbag exploded in a Honda Accord, shooting out metal fragments and severely injuring the car's driver.  Honda and Takata could not explain the incident, labeled it an "anomaly," and failed to issue a recall or seek involvement of federal safety regulators.  Though Takata reported to Honda that it was unable to

---

[3]"Our Aspirations / About Takata," *available at* http://www.takata.com/en/about/wish.html (last visited Nov. 19, 2014).

find a cause, Honda determined that Takata provided a reasonable explanation of the event and did not report the incident to regulators for more than four years after the fact.

50.     Despite Takata's public representations, Takata subjected its airbags to secret testing shortly after the 2004 incident.  The testing revealed that the steel canisters used to house the airbag's rapid-inflation system contained cracks that compromised its structural integrity. Upon learning that information, Takata ordered its technicians to destroy all evidence of the test results, including video footage, and computer backup files.[4]

51.     In 2007, Honda informed Takata that three additional airbag explosion incidents had occurred that year.  All three incidents involved defective airbags exploding and propelling metal fragment into the faces, necks, and bodies of car passengers upon deployment of the airbags.  These incidents triggered an internal investigation by Takata, including a survey of inflators.

52.     Despite warning signs, including three additional ruptures reported by Honda in 2007, the danger was not disclosed for years after the 2004 incident.  Again, Honda failed to initiate a recall or provide information about the ruptures to federal regulators.  According to regulatory findings, Honda wanted to wait for results from a "failure mode analysis" being conducted by Takata.  In each of the incidents, Honda settled confidential financial claims with the injured and failed to issue a safety recall until late 2008.  Even then, only a small fraction (approximately 4,200) of its vehicles was involved.

53.     Honda filed standard reports on the initial airbag injury in 2004 and followed up with similar filings for the 2007 incidents, yet in none of the four instances of ruptured airbags did Honda go beyond the standard form and separately alert safety regulators about the most

---

[4] *See* http://www.reuters.com/article/2014/11/07/us-autos-takata
reportidUSKBN0IR05H20141107 (last visited Nov. 20, 2014).

critical detail – that the airbags posed an explosion risk that could cause a serious injury or death. The standard form merely requires automakers to list the component responsible for the injury and does not allow for elaboration about the circumstances.

54.     Takata shared the results of its inflator survey analysis with Honda in November 2008, which indicated an airbag inflator issue.  This triggered a Honda recall, but only for 4,200 of its vehicles.  This recall took place four years after the first airbag explosion involving certain 2001 Honda Accord and Civil model vehicles to replace airbags that "could produce excessive internal pressure," causing "the inflator to rupture," spraying metal fragments through the airbag cushion. ("2008 Recall").[5]

55.     Takata provided another report to Honda in June 2009 concerning its 2008 analysis, stating that issues related to propellant production appeared to have been responsible for the "improper inflator performance."   Honda received two more claims of "unusual deployments," including an accident resulting in death in May 2009, and another in June 2009.

56.     After Takata's June 2009 follow up report and the subsequent "unusual deployment" claims, Honda expanded its recall to 440,000 more vehicles, including 2001 and 2002 Honda Civics and Accords and Acura vehicles.  In its recall documents, Honda did not mention injuries or deaths, referring only to cases of "unusual driver airbag deployments." ("2009 Recall").

57.     In August 2009, the NHTSA Recall Management Division sent an information request to Honda to evaluate the timeliness of Honda's decision, requesting Honda to explain why it did not include 2009 recall vehicles in the 2008 recall.  NHTSA also requested that Honda provide information relating to lawsuits, complaints, and warranty claims alongside an

---

[5] Nov. 11, 2008 Honda Recall Letter to NHTSA, at 2.

explanation of the "unusual deployments" that had occurred.[6]

58.     In its September 2009 reply to NHTSA, Honda stated that its information related to the "unusual deployments" originated from Takata: "We understood the causal factors to be related to airbag propellant due to handling of the propellant during airbag inflator module assembly."[7]   Honda also reported, based on information from Takata, the problem with the airbags was isolated to the "production of the airbag propellant prior to assembly of the inflators."[8]

59.     In its reply, Honda further disclosed that it received nine complaints and was subject to one lawsuit related to the 2008 and 2009 recalls.  And, for the first time, Honda told NHTSA about the 2004 incident involving the "unusual deployment" of the airbag.  Honda falsely claimed that it "only recently w[as] reminded of this incident," and that, until recently, Honda "had not associated it with the [2008 Recall] campaign."[9]

60.     In Takata's communications with NHTSA, Takata consistently provided misleading or incorrect information about the airbags it manufactured that were subject to the recalls.

61.     In November 2009, NHTSA requested information from Takata as part of NHTSA's investigation concerning the airbag inflators that triggered the 2009 Recall.  Takata submitted a partial response in December 2009 ("Partial Response") and a full response in February 2010 ("Full Response").

62.     In both responses, Takata insisted there were no substantive design differences between the inflators in the airbags at issue in the two recalls.  But in the Full Response, Takata

---

[6] Aug. 19, 2009 Letter from NHTSA to American Honda Motor Co.
[7] Sept. 16, 2009 Letter from American Honda Motor Co. to NHTSA, at 1.
[8] *Id.*
[9] *Id.* at 4.

stated that there were differences in the production processes between the lots.

63.     In both responses, Takata asserted that the defects only existed in specific lots manufactured between certain dates.  It claimed that the inflators involved in the 2008 Recall were manufactured between October 29, 2000, and December 1, 2000.  Takata also claimed that inflators involved in the 2009 Recall were manufactured between August 23, 2000, and February 25, 2001.

64.     Takata did not provide the dates the inflators were shipped as NHTSA requested and admitted it did not have this information, conceding that its records were flawed.  Instead, Takata only provided manufacturing dates.

65.     In both of its responses, Takata stated, "Takata has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by the recalls in 2008 and 2009 to any customers other than Honda.  The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda."[10]  This was not true.

66.     In its Full Response, Takata asserted that the defect identified in the 2009 Recall was the result of a single compression press, although Takata recommended to Honda that a small number of other vehicles with propellant processed on a different press be recalled as well.  Takata also asserted that the defective parts were all manufactured on a particular press (the "Stokes press") in a single manufacturing plant.  Takata further asserted that while it did manufacture 2,400 inflators using the same process as the defective inflators, the design was different and "[t]herefore Takata is convinced that the inflators sold [redacted] contain no safety-

---

[10] Dec. 23, 2009 Letter from Takata to NHTSA, at 2; Feb. 19, 2010 Letter from Takata to NHTSA, at 2.

related defect."[11]

67.     It its Full Response, Takata stated that it "believed – [redacted] – that expanding the recall to include all vehicles equipped with inflators manufactured with Stokes propellant produced through and including February 28, 2001 would capture all inflators with tablets that had a risk of producing overly energetic combustion.  This recommendation, as well as the analysis that supported it, was presented to Honda on June 12, 2009."[12]

68.     Honda and Takata represented to NHTSA and the consuming public that the total number of affected vehicles was relatively small.  But by 2010, only months after the last recall, Honda announced a third recall for an additional 379,000 vehicles, including 2002 Honda CR-V, 2002 Honda Odyssey, 2003 Honda Pilot, 2002-2003 Acura 3.2TL, and 2003 Acura 3.2 CL vehicles, while adding more 2001 and 2002 Honda Accords and Civics to its 2009 recall list ("2010 Recall").

69.     Once again, Honda's explanation for the airbag defects changed.  Honda explained that there were two different manufacturing processes utilized in the preparation of an airbag propellant.  While one process was within specification, the other was not.  Honda's expanded recall reached those vehicles employing airbags that had utilized manufacturing processes that were not within specification.

70.     Honda would have another recall in 2011, filing a Part 573 Defect and Noncompliance report for 2,430 replacement service part airbag modules that might have been installed in vehicles covered by previous recall expansion ("2011 Recall").

71.     By 2013, it became apparent that the defective airbag issue was of far greater magnitude than Takata or Honda initially reported to NHTSA.

---

[11] Feb. 9, 2010 Letter from Takata to NHTSA, at 5.
[12] *Id.* at 11-12.

72.     According to Honda's 2013 Defect and Noncompliance report, an exploding airbag in Puerto Rico in October 2011 prompted Honda to ask permission from NHTSA to collect "healthy" airbag modules to see if "abnormal combustion was possible." Honda found that even its so-called "healthy" airbags could abnormally combust in certain conditions.

73.     On February 8, 2013, NHTSA and Honda met to discuss the "ongoing investigation" into Honda's defective Takata airbags. Honda stated:

> A recreation of propellant production using the same methods as were used during 2001-2002 production periods indicated that it was possible for propellant produced during 2001-2002 to be manufactured out of specification without the manufacturing processes correctly identifying and removing the out of specification propellant. Separately, Honda was informed by the supplier of another potential concern related to airbag inflator production that could affect the performance of these airbag modules.[13]

74.     On April 10, 2013, Honda filed a new recall with NHTSA for its 2001-2003 Civic, 2002-2003 CR-V, and 2002 Odyssey vehicles ("2013 Recall"). In the 2013 Recall, Honda asserted that 561,422 vehicles may be affected by issues associated with Takata's airbag inflator. Specifically, Honda's recall described the defect as follows:

**Defect description:**

> In certain vehicles, the passenger's (frontal) airbag inflator could produce excessive internal pressure. If an affected airbag deploys, the increased internal pressure may cause the inflator to rupture. In the event of an inflator rupture, metal fragments could be propelled upward toward the windshield, or downward toward the front passenger's foot well, potentially causing injury to a vehicle occupant.[14]

75.     On April 11, 2013, Takata filed a Defect Information Report entitled, "Certain Airbag Inflators used as Original Equipment." ("2013 Takata Report"). Takata finally acknowledged that its defective inflators, once claimed only to affect Hondas, had, in fact,

---

[13] April 10, 2013 Letter to NHTSA, at 2-3.
[14] *Id.* at 2.

impacted vehicles made by other manufacturers.   The 2013 Takata Report identified the defective airbag as follows:

> Certain airbag inflators installed in frontal passenger-side airbag modules equipped with propellant wafers manufactured at Takata's Moses Lake, Washington plant during the period from April 13, 2000 (start of production) through September 11, 2002 . . . and certain airbag inflators manufactured at Takata's Monclova, Mexico plant during the period from October 4, 2001 (start of production) through October 31, 2002 . . . .[15]

76.    In the 2013 Takata Report, Takata asserted that it did not know how many inflators were installed in vehicles, as it did not have those records.[16]  While it did not have the information to assess the number of vehicles affected, it insisted that the total number of installed inflators would be extremely low.

77.    In April 2013, based on these admissions, six major automakers, including Nissan, BMW, and Mazda, issued recalls affecting more than 3.5 million vehicles containing Takata airbags.

78.    Chrysler and Ford also announced limited regional NHTSA recalls for vehicles originally sold or currently registered in Florida, Puerto Rico, Hawaii, or the U.S. Virgin Islands that were equipped with Takata airbag inflators.

79.    Takata's admission of the widespread problem prompted other automakers to issue recalls.  In October 2014, NHTSA issued a revised and expanded list of vehicles affected by the recall of defective Takata components.  Vehicles containing defective Takata airbags are now known to permeate ten automakers across dozens of models, totaling almost 8 million vehicles in the United States alone.  Those automakers are BMW (over 627,600 potentially affected vehicles), Chrysler (over 371,300 potentially affected vehicles), Ford (over 58,600

---

[15] April 10, 2013 Takata Report, at 3.
[16] *Id.*

potentially affected vehicles), General Motors (undetermined number of potentially affected vehicles), Honda (over 5,051,300 potentially affected vehicles), Mazda (over 64,800 potentially affected vehicles), Mitsubishi (over 11,900 potentially affected vehicles), Nissan (over 694,600 potentially affected vehicles), Subaru (over 17,500 potentially affected vehicles), and Toyota (877,000 potentially affected vehicles).[17]

80.     In an October 22, 2014 statement from Honda regarding Airbag Inflator Regional Safety Improvement Campaigns, Honda announced:

> If a customer has received notification from Honda about this special campaign, Honda requests that the customer promptly contact his/her local authorized dealer and make an appointment for replacement of the covered airbag components.

81.     However, Honda has acknowledged that it would not send out recall letters to car owners or lessees until there are parts available.  Accordingly, many drivers would not receive notices for weeks or longer as they continue to drive vehicles with potentially lethal airbags or discontinue using their vehicles altogether.

82.     Authorized dealers are experiencing a severe shortage of parts to replace the faulty airbags.  Dealers have been telling frustrated consumers to expect to wait months before airbags can be replaced.  Honda owners who have received recall notices have been told to wait at least a month before their authorized dealer has availability to assess their vehicle.[18]

83.     Consumers are being put in potentially dire situations because replacement airbag parts are not available in the quantities of those affected by the millions of vehicles subject to recalls.

---

[17] Ben Klayman, *U.S. regulators expand number of vehicles affected by Takata recalls*, http://www.reuters.com/article/2014/10/22/us-autos-takata-warning-idUSKCN0IB03B20141022, (Oct. 22, 2014) (last visited Nov. 20, 2014).
[18] Jeff Harrington, *Tampa Bay auto dealers warn of delays to replace defective airbags*, http://www.tampabay.com/news/business/autos/tampa-bay-auto-dealers-warn-of-delays-to-replace-defective-airbags/2203132 (Oct. 21, 2014) (last visited Nov. 20, 2014).

84. Over the past 13 years that Takata has known there was a serious safety-related problem with its airbags, there have been at least four deaths (currently there are six suspected as linked to Takata airbags) and 139 injuries linked to defective Takata airbags.

85. As late as 2011, supervisors at Takata's Monclova plant were reporting potentially lethal defects in the manufacturing process. Based on internal Takata documents, Takata was unable to meet its own standards for safety up until at least 2011.[19]

86. Despite all of the theories proposed by Takata to federal regulators as to the source of the defects, according to documents reviewed by *Reuters*, Takata also cited rust, bad welds, and even chewing gum dropped into at least one inflator as reasons for the defects. The same documents show that in 2002, Takata's plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.

87. The scope of the recall continues to grow, and problems relating to this airbag defect continue. NHTSA is now investigating Takata airbags manufactured between 2000 and 2007 to determine whether Takata airbag inflators made during that time were improperly sealed.[20]

88. In a Consumer Advisory dated October 22, 2014, NHTSA stated:

The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford and General Motors vehicles to act immediately on recall notices to replace defective Takata airbags. Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday. The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the

---

[19] *Exclusive: Takata engineers struggled to maintain airbag quality, documents reveal*, http://www.reuters.com/article/2014/10/18/us-takata-airbags-idUSKCN0I701B20141018 (Oct. 17, 2014) (last visited Nov. 20, 2014).

[20] *See*, *supra* n.17.

Gulf of Mexico in Texas, Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin Islands and Hawaii.

89.     The U.S. Department of Justice has reported that it is investigating whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers, including Toyota and Honda.

90.     On November 18, 2014, NHTSA announced that it is calling for a nationwide recall of vehicles with certain driver's side airbags made by Takata due to the agency's evaluation of a recent driver's airbag failure in a vehicle located outside of the current regional recall area.[21]   The agency announced, "Based on this new information, unless Takata and the manufacturers quickly agree to this recall, NHTSA will use the full extent of its statutory powers to ensure vehicles that use the same or similar air bag inflator are recalled."[22]   "As part of these efforts and [NHTSA's] ongoing investigation into both the defect and the scope of the recalls, the agency also issued a General Order to Takata and all ten of the vehicle manufacturers that use Takata air bag inflators – BMW, Chrysler, Ford, General Motors, Honda, Mazda, Mitsubishi, Nissan, Subaru, and Toyota – requiring each manufacturer to file, under oath, a detailed report and produce all related documents about completed, ongoing or planned testing of Takata inflators outside the current regional recall areas.  The agency is demanding this information to compel Takata and the affected industry to be frank with not only NHTSA, but the American public, as to what testing and additional steps they have done and plan to do to control and mitigate the risk associated with Takata's defective inflators."[23]

91.     On November 19, 2014, two United States senators raised the possibility of a

---

[21] *See* http://www.nhtsa.gov/About+NHTSA/Press+Releases/2014/DOT-calls-for-national-recall-of-takata-driver-air-bags (last visited Nov. 20, 2014).
[22] *Id.*
[23] *Id.*

sixth fatality linked to Takata's airbags that occurred in Arizona in 2003.[24]

92.     Because of Defendants' fraudulent and malicious conduct, Plaintiffs and the Class have been harmed and have suffered actual damages to the extent that their Defective Vehicles contain potentially lethal airbags that continue to pose a substantial threat to drivers and passengers.  Plaintiffs and the Class received less than the benefit of their bargain, receiving vehicles of lesser standard and quality than represented, and have vehicles that are well below reasonable consumer expectation.

93.     Plaintiffs and the Class reasonably believed that their vehicles were safe, as promised, and own vehicles worth fundamentally less than those not containing a defective Takata airbag.  Plaintiffs and the Class are now forced with the dreadful choice of continuing to use vehicles with defective, and potentially lethal airbags, or not using their vehicles at all.

## Class Action Allegations

94.     Plaintiffs bring this action against Defendants pursuant to Fed. R. Civ. P. 23(a) and (b)(2) or (b)(3) on behalf of themselves and all other persons similarly situated.  Plaintiffs seek to represent the following Class:

> All persons who currently own or lease one or more vehicles in Florida containing Takata airbags subject to recall.

95.     Excluded from the Class are:

> A.     Defendants and any entity in which Defendants have a controlling interest, and its legal representatives, employees, officers, directors, assigns and successors;
>
> B.     The judge, magistrate and any special master to whom this case is assigned, and any member of their immediate families;

---

[24] http://www.reuters.com/article/2014/11/19/us-takata-recall-death-idUSKCN0J324520141119

C.      To the extent the class certification order permits exclusion, all persons who timely submit proper requests for exclusion from the plaintiff class; and

D.      Consumers who have suffered a personal injury as a result of a Takata airbag.

96.      The Class consists of all persons who currently own or lease one or more vehicles in Florida containing a Takata airbag subject to recall, thus making individual joinder impracticable pursuant to Rule 23(a)(1), Fed. R. Civ. P.  There are millions of defective vehicles nationwide, and thousands of defective vehicles in each of the states, including Florida.  The individual members of the Class are ascertainable, as the names and addresses of all Class Members can be identified in Defendants' records, as well as state vehicle registration and sales records.  The precise number of Class Members numbers at least in the thousands, and can be obtained only through discovery; however, the number of Class Members is more than can be consolidated in one complaint such that it would be impracticable for each member to bring an individual action.  The disposition of the claims in a single class action will provide substantial benefits to all parties and to the Court, and Plaintiffs do not anticipate any difficulties in managing this action as a class action.

97.      The factual and legal bases of the claims are common to all Class Members and represent a common injury.  *See* Rule 23(a)(2), Fed. R. Civ. P.

98.      There are many common questions of law and fact.  These common questions predominate over any questions of fact that pertain to any individual Class Member.  These common issues include, but are not limited to, the following:

A.      Whether the Defective Vehicles suffer from airbag defects;

B.      Whether Defendants conceived, designed, manufactured and sold defective airbags;

C.      Whether Defendants knew or should have known about the defective airbags;

D.      Whether Defendants had a duty to disclose the defective nature of the airbags to Plaintiffs and Class Members;

E.      Whether Defendants omitted or failed to disclose material facts that might affect Plaintiffs' decision whether to purchase, lease, or retain the Defective Vehicles;

F.      Whether Defendants misrepresented that the Defective Vehicles and airbags were safe;

G.      Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices by failing to disclose that the Defective Vehicles were manufactured with defective airbag inflators;

H.      Whether a reasonable consumer would be likely misled by Defendants' conduct;

I.      Whether the Defective Vehicles were unfit for their ordinary purpose;

J.      Whether Plaintiffs and the Class Members are entitled to equitable relief, including injunctive relief;

K.      Whether Defendants violated Fla. Stat. §§ 672.313 and 672.314 ; and

L.      Whether Defendants' conduct constituted fraudulent concealment.

99.      These common questions of law and fact predominate over individual questions and a class action is the superior means to litigate the claims.  *See* Rule 23(b)(3), Fed. R. Civ. P.

100.      Plaintiffs are members of the class they seek to represent.  Plaintiffs' claims are typical of the respective Class's claims because of the similarity, uniformity, and common

purpose of Defendants' unlawful conduct.  Each Class Member has sustained, and will continue

to sustain, damages in the same manner as Plaintiffs as a result of Defendants' wrongful conduct.

101.    Plaintiffs are adequate representatives of the Class they seeks to represent and will

fairly and adequately represent and protect the interests of the Class as required by Rule 23(a)(4),

Fed. R. Civ. P.  The named Plaintiffs identified in this Complaint own a vehicle with a Takata

airbag that is subject to recall and is thus typical of the Class Members as required by Rule

23(a)(3), Fed. R. Civ. P.  Plaintiffs and their counsel are committed to vigorously prosecuting

this action on behalf of the Class.  Neither Plaintiffs nor their counsel have any interests adverse

to those of the Class.  Plaintiffs' counsel have extensive experience in class action litigation and

product defect litigation such as this and have the financial and legal resources to prosecute this

action.

102.    The questions of law or fact common to the Plaintiffs and the Class's claims

predominate over any questions of law or fact affecting only individual members of the Class.

Common issues predominate here, as liability can be determined on a class-wide basis.

103.    A class action is superior to other methods of adjudication, as joinder of all Class

Members would create hardship and inconveniences for the affected Class Members.  The

members of the Class reside throughout the state of Florida.  Further, individual claims by Class

Members would be impractical, as the costs to pursue such claims on an individual basis would

likely exceed the value of the potential claim.  Consequently, individual Class Members likely

have no interest in prosecuting and controlling separate actions.  In fact, there are no known

individual Class Members interested in pursuing individual or separate actions.

104.    Certification is also appropriate under Rule 23(b)(2), Fed. R. Civ. P., in that

Defendants acted or refused to act on grounds that apply generally to the Class, thus warranting

injunctive or declaratory relief.  Defendants should be required to replace all defective airbags that are subject to recall with safe and effective airbags.

105.    Defendant Takata has known of the defects in its airbags since at least 2001, and Defendant Honda has known of the defects in the Takata airbags since 2004.  Defendants knew well before Plaintiffs and Class Members owned the vehicles that contain the defective airbags and have concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the defects.

106.    Although Defendants have now finally acknowledged to federal safety regulators that Takata's airbags are defective, for years, Defendants failed to fully investigate or disclose the seriousness of the issue and, in fact, downplayed the widespread prevalence of the problem and the severity of the defect.

107.    Accordingly, any applicable statute of limitations has been tolled by Defendants' knowledge, active concealment, and denial of the facts herein, which behavior is ongoing, necessitating the most recent actions by NHTSA.

### Breach of Implied Warranties and Express Warranties by Affirmation, Promise, Description, Sample Fla. Stat. §§ 672.313 and 672.314

108.    Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein verbatim.

109.    At all times, Defendants are and have been engaged in the business of designing, manufacturing, distributing, marketing, and selling vehicles containing the defective Takata airbags throughout the United States, including the state of Florida.

110.    At all times, Defendants are and have been merchants and sellers of these vehicles within the meaning of Fla. Stat. §§ 672.313 and 672.314.

111.    Defendants expressly warranted, affirmed, promised, and represented that these vehicles and airbags conform to all applicable FMVSS.

112.    Defendants expressly and impliedly warranted to Plaintiffs and the members of the Class that all of the vehicles were merchantable and fit for their ordinary, particular, and intended use and purpose.

113.    These vehicles and airbags, when sold and at all times thereafter, were not merchantable and fit for their ordinary, particular, and intended use and purpose and do not conform to all applicable FMVSS, including but not limited to FMVSS 208.

114.    The vehicles and airbags manufactured and sold by Defendants to Plaintiffs and the members of the Class are not merchantable and fit for their ordinary, particular, and intended use and purpose as vehicles and airbags.  Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of expelling metal shrapnel at vehicle occupants upon deployment or otherwise malfunctioning.

115.    Defendants breached their implied and express warranties to Plaintiffs and the members of the Class that these vehicles were merchantable at the time of delivery, thus depriving Plaintiffs of the product it bargained for -- a vehicle that was merchantable and fit for its ordinary, particular, and intended purpose and that conformed as warranted to FMVSS and could be safely operated on roadways.

116.    Defendants breached their implied and express warranties to Plaintiffs and Class that the vehicles were fit for their ordinary, particular, and intended use and purpose at the time of delivery and at all times thereafter.

117.    Defendants breached their express warranties to Plaintiffs and the members of the class that the vehicles conformed to applicable FMVSS requirements.

118.    Plaintiffs have complied with all conditions precedent, including providing Defendants with notice of the breach as alleged herein.

119.    Plaintiffs have provided written notice of the breach prior to filing this lawsuit.

120.    Further, Defendants were provided notice of the defective nature of the Takata airbags by virtue of their own internal testing and prior complaints filed against them.

121.    The element of privity, if found to be applicable, exists vis-à-vis Defendants and the members of the Class because: (i) Defendants have had direct written communications with Plaintiffs and the members of the Class with regard to the vehicles via standardized written certifications; (ii) the retailers that have sold the vehicles to Plaintiffs and the members of the Class are agents, in law or in fact, of Defendants; (iii) Defendants have entered into contracts with Plaintiffs and the members of the Class in connection with the assurance of the warranty and FMVSS certification at issue; and (iv) Plaintiffs and the members of the Class are the intended third-party beneficiaries of the warranty and certification at issue.

122.    As a direct and proximate result of Defendants' breaches, Plaintiffs and the members of the Class have suffered monetary loss and cannot operate such vehicles as originally purchased.

## Fraudulent Concealment

123.    Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set forth herein verbatim.

124.    As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and Takata airbags.

125.    At all times, Defendants possessed superior knowledge of the Defective Vehicles and the Takata airbags and knew these representations were false when made.

126.   At all times, Plaintiffs and the members of the Class, without any fault or lack of diligence on their own part, were unaware and ignorant of the true character, nature, and quality of the Defective Vehicles and Takata airbags.

127.   Defendants had a duty, and have a continuing duty, to disclose material facts relating to the Defective Vehicles and the Takata airbags to Plaintiffs and the members of the Class, and Defendants failed to do so and continue to fail to do so to this day.

128.   As previously mentioned herein, the Defective Vehicles and airbags were, in fact, defective, unsafe, and unreliable because the Defective Vehicles' Takata airbags were subject to propelling shrapnel upon deployment or other malfunctions.

129.   Defendants had a duty to disclose that the Defective Vehicles and the Takata airbags therein were defective, unsafe, and unreliable in that the Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions, because the Florida Class relied on the Defendants' representations that the vehicles that they own were safe.

130.   The aforementioned concealment was material, because if it had been disclosed, the Florida Class would not have bought, leased, or retained their vehicles.

131.   The aforementioned representations were also material because they were facts that would typically be relied upon by a person purchasing, leasing, or retaining a new or used motor vehicle.   Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the Defective Vehicles' Takata airbags.   Defendants intentionally made the false statements in order to sell vehicles and to avoid the expense and public relations nightmare of a recall.

132.   Plaintiffs and the Class relied on Defendants' reputations, their affirmative assurances that their vehicles and the Takata airbags were safe and reliable and conformed to

FMVSS and other similar false statements, and their failure to disclose the Takata airbag's dangers, in purchasing, leasing, or retaining the vehicles containing Takata's defective airbags.

133.    Defendants' conduct was knowing, intentional, and malicious, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the Class. Plaintiffs and the Class are, therefore, entitled to an award of punitive damages.

134.    Defendants' fraudulent concealment is common to Plaintiffs and the members of the class.

135.    As a direct and proximate result of Defendants' fraudulent concealment, Plaintiffs and the members of the Class have suffered monetary loss.  As a result of Defendants' fraudulent concealment, Plaintiffs and the Class have been injured in an amount to be proven at trial, including but not limited to, their lost benefit of the bargain, their overpayment at the time of purchase, the diminished value of their vehicles, and loss of use of their vehicles.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of itself and all others similarly situated, pray that the Court enter judgment against Defendants and in favor of Plaintiffs and the Class and award the following relief:

A.    Certification of the proposed class under Rule 23, Fed. R. Civ. P.;

B.    Appointment of Plaintiffs as class representative;

C.    Appointment of the undersigned attorneys as Class Counsel;

D.    Finding that the Defendants' conduct constitutes a breach of express warranty;

E.    Finding that the Defendants' conduct constitutes a breach of implied warranty;

F.    Finding that the Defendants' conduct constitutes fraudulent concealment;

G.    An award of injunctive relief, compensatory damages and attorneys' fees; and

H.    Such other and further judiciary determinations and relief as may be appropriate

in this proceeding.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

November 25, 2014                              Respectfully submitted,

RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, L.L.C.

s/ *Catherine H. McElveen*
Catherine H. McElveen, SC Bar No: 76725
kmcelveen@rpwb.com
T. Christopher Tuck, SC Bar No.: 16891
ctuck@rpwb.com
A. Hoyt Rowell, III (*pending admission*)
hrowell@rpwb.com
James L. Ward, Jr. (*pending admission*)
jward@rpwb.com
Robert S. Wood (*pending admission*)
bwood@rpwb.com
1037 Chuck Dawley Blvd.
Building A
Mt. Pleasant, SC  29464
Phone: (843) 727-6500
Facsimile:  (843) 216-6509

THE GARVIN LAW FIRM
William Garvin
1546-1 Metropolitan Blvd
Tallahassee ,FL 32308
Tallahassee, FL 32308
Phone: (850) 422-3400
wgarvin@garvinlawfirm.com

ATTORNEYS FOR PLAINTIFF